**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| **8311 PRESTON HIGHWAY LR, LLC,** | ) | Case No. 3:26-bk-00886 |
| | ) | Judge Randal S. Mashburn |
| Debtor. | ) | |

---

**THE DEADLINE FOR FILING A RESPONSE IS: September 8, 2026**
**IF A RESPONSE IS TIMELY FILED, THE HEARING WILL BE: September 22, 2026 at 9:30 a.m. in Courtroom 1, 701 Broadway, Nashville, TN 37203**
**(Virtual appearances at the hearing only if allowed; See website for details.)**

---

The relief described below is being requested from the Court. **YOUR RIGHTS MAY BE AFFECTED**. If you do not want the Court to grant this request, you or your attorney must file a response or objection by the deadline, explaining why you are opposed. **If a response or objection is not filed, the Court may grant the request without a hearing.** Any response must identify the motion to which you are responding and state the response deadline and hearing date.

The Court's filing requirements and instructions can be located on the Court's website at www.tnmb.uscourts.gov/9013. If you need assistance, you may call the Bankruptcy Court at (615) 736-5584 or visit the Bankruptcy Court in person at 701 Broadway, 1st Floor, Nashville, TN during operating hours.

---

**MOTION TO APPROVE COMPROMISE AND SETTLEMENT BETWEEN THE DEBTOR AND REGIONS BANK**

Pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure, 8311 Preston Highway LR, LLC (the "**Debtor**") hereby files this motion (the "**Motion**") seeking an order, substantially in the form submitted herewith, approving the compromise and settlement of disputes between the Debtor and Regions Bank ("**Regions**") regarding the amount, treatment, and satisfaction of Regions' claims against the Debtor and its estate, and specifically (a) approving the Agreement (defined below) and (b) granting other relief described herein. In support of this Motion, the Debtor respectfully represents as follows:

1. On February 27, 2026, the Debtor commenced this case by filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

2. No trustee or examiner has been appointed in this case, and the Debtor continues to operate as a debtor-in-possession.

3. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157. Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory predicates for the relief requested herein are Section 105 of the Bankruptcy Code and Rule 9019 of the Federal Rules of Bankruptcy Procedure.

5. On or about August 16, 2021, the Debtor and Regions entered into a Construction Loan Agreement pursuant to which Regions agreed to make a construction loan to the Debtor in a principal amount not to exceed $4,000,000.00, evidenced by a Promissory Note dated August 16, 2021 (the "**Construction Note**"). On or about February 3, 2023, the Debtor and Regions entered into a First Amendment to Construction Loan Agreement and Promissory Note pursuant to which Regions agreed to make an additional construction loan of $700,000.00, evidenced by a Promissory Note dated February 3, 2023 (together with the Construction Note, the "**Notes**").

6. The Notes are secured by, among other things, a Construction Mortgage and Security Agreement and an Amended and Restated Construction Mortgage and Security Agreement encumbering the real property commonly known as 8311 Preston Highway, Louisville, Kentucky (the "**Property**"), collateral assignments of leases and rents, and UCC financing statements (collectively, together with the other documents evidencing or securing the Notes, the "**Loan Documents**"). The Property is the Debtor's principal asset.

7. Landmark Recovery of Louisville, LLC and Landmark Recovery of Kentucky, LLC (together, the "**Guarantors**") guaranteed the Debtor's obligations under the Notes pursuant to certain guarantees.

8. The Debtor has filed a Motion to Determine Value of Secured Claim of Regions Bank (the "**Valuation Motion**"), which remains pending, and the Debtor's *Combined Chapter 11 Plan of Reorganization and Disclosure Statement (Single Asset Real Estate)* [Doc. No. 36] (the "**Combined Plan**") is set for a confirmation hearing. The amount and treatment of Regions' secured claim are the principal contested issues in this case.

9. Rather than proceed with contested litigation over the Valuation Motion and confirmation of the Combined Plan, the Debtor, the Guarantors, and Regions engaged in arms-length negotiations regarding a consensual resolution of Regions' claims.

10. Those negotiations were successful, and the parties have entered into a Release and Settlement Agreement (the "**Agreement**"), a copy of which is attached hereto as ***Exhibit A***. The material terms of the Agreement include the following:

a. Regions has agreed to accept the net sum of $3,300,000.00 (the "**Settlement Sum**") in full and final settlement of the Judgment (as defined in the Agreement) and the obligations under the Loan Documents, provided that the Settlement Sum is received by Regions in full, whether through a refinance or a closed sale of the Property;

b. the Debtor will attempt to obtain, within 60 days from the date of the Agreement, a firm commitment to refinance the Property on or before December 23, 2026 (the "**Outside Date**");

c. if the Debtor does not obtain a firm refinancing commitment within 60 days of execution of the Agreement, the Debtor will list the Property for sale with a reputable real estate broker on the 61st day following execution, at a price reasonably calculated to yield a net payment to Regions of at least the Settlement Sum, and the Debtor may continue to pursue a refinance while the Property is listed. If a sale closes on or before the Outside Date, the net proceeds will be applied first to the ordinary costs of sale and second to Regions in an amount equal to the Settlement Sum, with any remaining proceeds belonging to the Debtor and its estate;

d. if a sale does not close by the Outside Date, the Debtor will either auction the Property within 90 days or Regions will receive relief from the automatic stay to foreclose, in Regions' sole discretion;

e. until closing or payoff, the Debtor will continue to pay Regions $20,000.00 per month, due by the 17th day of each month, to be applied to the loan, with such monthly payments not reducing the Settlement Sum;

f. the Debtor will remain solely responsible for all ad valorem real property taxes, assessments, and any code enforcement, zoning, or other governmental violations affecting the Property, without any reduction of or offset against the Settlement Sum;

g. upon Regions' receipt of the Settlement Sum in full, the Judgment and all obligations under the Loan Documents will be deemed fully satisfied, and Regions shall deliver releases and satisfactions of the mortgages,

assignments of leases and rents, and UCC filings, a release and satisfaction of the Judgment and any related judgment liens and *lis pendens*, a dismissal of the foreclosure action with prejudice, the original Notes marked “paid in full,” and a release and discharge of each guaranty and each Guarantor from all claims arising out of or relating to the Notes, the Loan Documents, and the Judgment, including any claim for a deficiency.

11. The Debtor and Regions were each represented by counsel and engaged in negotiations leading to the Agreement. Each party has thoroughly evaluated the likelihood of success of its respective positions, the likelihood of recovery, and the expense of litigation.

12. It is the Debtor’s opinion that this settlement is in the best interest of the estate and should be approved. The Debtor believes that this proposed settlement is more beneficial to creditors than continued litigation. The Agreement resolves the largest claim in this case at a substantial discount, fixing Regions’ recovery at the $3,300,000.00 Settlement Sum, eliminates the need for a contested evidentiary hearing on the Valuation Motion and a contested confirmation, provides a clear path to a refinance or sale of the Property while preserving any remaining value for the estate, and secures a full release of the Debtor and the non-debtor Guarantors upon payment of the Settlement Sum, all while avoiding the expense, delay, and uncertainty of continued litigation.

13. Bankruptcy Rule 9019 provides that the Court "may approve a compromise or settlement." Compromises are tools for expediting the administration of the case and reducing administrative costs and are favored in bankruptcy. *See Fishell v. Soltow* (*In re Fishell*), No. 94-1109, 1995 WL 66622, at *2 (6th Cir. February 16, 1995); *In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996) ("To minimize litigation and expedite the administration of a bankruptcy case,

'[c]ompromises are favored in bankruptcy.'") (quoting 9 COLLIER ON BANKRUPTCY ¶ 9019.03[1] (15th Ed. 1993)).

14. The benchmark for determining the propriety of a bankruptcy settlement is always whether the settlement is in the best interests of the estate. *In re Energy Co-op, Inc.*, 886 F.2d 921, 926 (7th Cir. 1989) (citing *In re American Reserve Corp.*, 841 F.2d 159, 161 (7th Cir. 1987); *In re A & C Properties*, 784 F.2d 1377, 1380, 1381 (9th Cir. 1986)); *In re Barton*, 45 B.R. 225 (Bankr. M.D. Tenn. 1984).

15. The standards by which a Court should evaluate a settlement are well established. In addition to considering the proposed terms of the settlement, the Court should consider the following factors:

a. the probability of success in litigation;

b. the difficulty in collecting any judgment that may be obtained;

c. the complexity of the litigation involved, and the expense, inconvenience, and delay necessarily attendant to it; and

d. the interest of creditors and a proper deference to their reasonable views of the settlement.

*See Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424–25 (1968); *Fishell*, 1995 WL 66622, at *3; *In re Barton*, 45 B.R. at 227; *In re Pa. Truck Lines, Inc.*, 150 B.R. 595, 598 (E.D. Pa. 1992), *aff'd*, 8 F.3d 812 (3d Cir. 1993).

16. The decision to approve a settlement or compromise is within the discretion of the Court and is warranted where the settlement is found to be reasonable and fair in light of the particular circumstances of the case. *See TMT Trailer Ferry*, 390 U.S. at 424–25. The settlement

need not be the best that the debtor could have achieved, but need only fall "within the reasonable range of litigation possibilities." *In re Penn Cent. Transp. Co.*, 596 F.2d 1102, 1114 (3d Cir. 1979). In making its determination, a court should not substitute its own judgment for that of the debtor. *In re Neshaminy Office Bldg. Assocs.*, 62 B.R. 798, 803 (E.D. Pa. 1986).

17. The Debtor, in the exercise of its sound business judgment, believes that approval of the Agreement is in the best interests of the Debtor, its creditors, and all parties in interest, particularly given the benefits afforded to the estate via the terms of the Agreement.

18. This resolution fixes Regions' recovery at a discounted amount, stops the continued accrual of interest, fees, and litigation expense, resolves the Valuation Motion, ensuring a superior outcome for the estate and its creditors.

19. Notice of this Motion and an opportunity for objections will be given to creditors and parties in interest pursuant to Fed. R. Bankr. P. 9019 and LBR 9013-1.

20. Under the circumstances presented here, the Debtor has satisfied the applicable standards.

**WHEREFORE**, based on the foregoing, it is respectfully requested that the Court approve the settlement as described herein, authorize the parties to take all action contemplated by and necessary to effectuate the settlement, and grant such other relief as may be necessary and appropriate.

Respectfully submitted,

/s/ R. Alex Payne

R. Alex Payne
Gray Waldron
DUNHAM HILDEBRAND PAYNE WALDRON, PLLC
9020 Overlook Boulevard, Suite 316
Brentwood, Tennessee 37027
629.777.6529
alex@dhnashville.com
*Counsel for the Debtor*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was filed electronically on August 17, 2026. Notice of this filing is given via regular U.S. mail to the Debtor, all creditors, the U.S. Trustee, and any party who has filed a written request for notices.

/s/ R. Alex Payne
R. Alex Payne

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| **8311 PRESTON HIGHWAY LR, LLC,** | ) | Case No. 3:26-bk-00886 |
| Debtor. | ) | Judge Randal S. Mashburn |

**[PROPOSED] ORDER APPROVING COMPROMISE AND SETTLEMENT**
**BETWEEN THE DEBTOR AND REGIONS BANK**

This matter is before the Court upon the Debtor's Motion to Approve Compromise and Settlement (the "Motion") resolving disputes between 8311 Preston Highway LR, LLC (the "Debtor") and Regions Bank ("Regions") regarding the amount, treatment, and satisfaction of Regions' claims against the Debtor and its estate. In the Motion, the Debtor sought entry of an order pursuant to Section 105 of the Bankruptcy Code and Bankruptcy Rule 9019 approving the compromise and settlement among the Debtor, the Guarantors (as defined in the Motion), and Regions on the terms and conditions set forth in the Motion. The Debtor provided notice of the Motion pursuant to Local Rule 9013-1. No objections were

filed to the Motion. The Court hereby finds that the Debtor, in the proper exercise of its business judgment, determined that the relief afforded herein is in the best interests of the Debtor's creditors and the Debtor's estate. It is therefore ORDERED as follows:

1. The Motion is GRANTED.

2. The Agreement, attached to the Motion as Exhibit A, is hereby approved in its entirety.

3. The Debtor, the Guarantors, and Regions are authorized to take all actions necessary or appropriate to implement and effectuate the Agreement in accordance with its terms.

4. Regions will accept the net sum of $3,300,000.00 (the "Settlement Sum") in full and final settlement of the Judgment and the obligations under the Loan Documents (each as defined in the Agreement), on the terms and subject to the conditions and deadlines set forth in the Agreement.

5. The releases set forth in the Agreement are approved and shall be effective in accordance with the terms of the Agreement, including the release and discharge of the Debtor and the Guarantors upon Regions' receipt of the Settlement Sum in full.

6. Nothing in this Order constitutes authorization to sell the Property (as defined in the Agreement); any sale of the Property shall remain subject to approval of this Court to the extent required by the Bankruptcy Code.

7. Except as expressly provided herein or in the Agreement, nothing in this Order or the Agreement shall be deemed an admission as to the validity or priority of any claim, or a waiver or limitation of any party's rights, claims, defenses, or causes of action under the

Bankruptcy Code or any other applicable nonbankruptcy law, all of which are expressly preserved.

8. Nothing in this Order or the Agreement constitutes an admission of liability by any party.

9. Each party shall bear its own fees and costs incurred in connection with the Agreement.

10. This Order shall remain in effect notwithstanding the dismissal or conversion of the Debtor's Chapter 11 case.

11. The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order and to enforce the terms of this Order.

IT IS SO ORDERED.

THIS ORDER WAS SIGNED AND ENTERED ELECTRONICALLY
AS INDICATED AT THE TOP OF THE FIRST PAGE.

APPROVED FOR ENTRY:

/s/ R. Alex Payne
R. Alex Payne
Gray Waldron
DUNHAM HILDEBRAND PAYNE WALDRON, PLLC
9020 Overlook Boulevard, Suite 316
Brentwood, Tennessee 37027
629.777.6529
alex@dhnashville.com
*Counsel for the Debtor*

**EXHIBIT A**

*(Release and Settlement Agreement)*

# RELEASE AND SETTLEMENT AGREEMENT

THIS RELEASE AND SETTLEMENT AGREEMENT (the "Agreement") is made and entered into as of August 14, 2026, by and between REGIONS BANK ("Regions") and 8311 PRESTON HIGHWAY LR, LLC ("Borrower") and LANDMARK RECOVERY OF LOUISVILLE, LLC and LANDMARK RECOVERY OF KENTUCKY, LLC (collectively, "Guarantor"). Regions, Borrower, and Guarantor may hereinafter together be referred to as the "Parties."

## Recitals

WHEREAS, on or about August 16, 2021, Borrower entered into a Construction Loan Agreement with Regions by which Regions agreed to make a construction loan in the principal amount not to exceed $4,000,000.00, to fund construction of renovations ("**Construction Loan Agreement**").

WHEREAS, in connection with the Construction Loan Agreement, Borrower executed and delivered to Regions a Promissory Note ("**Construction Note**") dated August 16, 2021 in the original principal amount of $4,000,000.00.

WHEREAS, to secure the obligations evidenced by the Construction Note, Borrower executed and delivered to Regions a Construction Mortgage and Security Agreement ("**Mortgage**") dated August 16, 2021. The Mortgage was recorded on September 13, 2021, in Mortgage Book 17640, Page 796 in the office of the Jefferson County, Kentucky Clerk (the "**Clerk's Office**"). The Mortgage conveyed a first and prior lien on the real property commonly known as 8311 Preston Highway, Louisville, Kentucky, together with all improvements thereon, which real property is more particularly described in the Mortgage (the "**Real Estate**" or "**Property**").

WHEREAS, as further security for repayment of the Construction Note and performance of other obligations, Borrower executed and delivered to Regions a Collateral Assignment of Leases and Rents ("**ALR**") dated August 16, 2021, recorded September 13, 2021, in Deed Book 12133, Page 725 in the Clerk's Office. The ALR, *inter alia*, (i) pledges to the holder of the Construction Note the leases, rents, income, issues, revenues and profits, from the Real Estate, and (ii) authorizes the holder of the Construction Note, in the event of a default thereunder, to enter upon the Real Estate and, among other things, to demand, collect, possess, receive, and/or sue for the rents, issues, and profits and do all acts relating to collection thereof.

WHEREAS, as further security for repayment of the Construction Note and performance of other obligations, Borrower granted to Regions a security interest in certain collateral described in the Mortgage (the "**Collateral**"). A UCC financing statement evidencing such security interest and describing the Collateral was recorded in the Clerk's Office on September 13, 2021, in Fixture Filing Book 122, Page 222 ("**Fixture Filing**"). Further, a UCC financing statement evidencing such security interest and describing the Collateral was filed in the office of the Delaware Secretary of State on August 20, 2021, as File Number 2021 6621214 ("**UCC Financing Statement**").

WHEREAS, as further security for repayment of the Construction Note, on August 16, 2021, Landmark Louisville executed and delivered to Regions a Guaranty ("**Landmark Louisville Guaranty**"). Landmark Louisville, among other things, agreed to perform fully and promptly when due all of the covenants, agreements, and other obligations undertaken by Borrower in the Construction Note and Loan Agreement.

WHEREAS, as further security for repayment of the Construction Note, on August 16, 2021, Landmark Kentucky executed and delivered to Regions a Guaranty ("**Landmark Kentucky Guaranty**"). Landmark Kentucky, among other things, agreed to perform fully and promptly when due all of the covenants, agreements, and other obligations undertaken by Borrower in the Construction Note and Loan Agreement.

WHEREAS, On or about February 3, 2023, Borrower entered into a First Amendment to Construction Loan Agreement and Promissory Note ("**Amendment**"). Under the Amendment, Regions agreed to make an additional construction loan in the principal amount of $700,000.00, to fund additional costs of construction of renovations.

WHEREAS, in connection with the Amendment, Borrower executed and delivered to Regions a Promissory Note ("**Supplemental Note**," and with the Construction Note, the "**Notes**") dated February 3, 2023, in the original principal amount of $700,000.00.

WHEREAS, to secure the obligations evidenced by the Notes, Borrower executed and delivered to Regions an Amended and Restated Construction Mortgage and Security Agreement ("**Amended Mortgage**") dated February 3, 2023. The Amended Mortgage was recorded on March 3, 2023, in Mortgage Book 18419, Page 531 in the Clerk's Office.

WHEREAS, as further security for repayment of the Notes and performance of other obligations, Borrower executed and delivered to Regions an Amended and Restated Collateral Assignment of Leases and Rents ("**Amended ALR**") dated February 3, 2023, and recorded on March 3, 2023, in Deed Book 12563, Page 825 in the Clerk's Office. The Amended ALR, *inter alia*, (i) pledges to the holder of the Note the leases, rents, income, issues, revenues and profits, from the Real Estate, and (ii) authorizes the holder of the Notes, in the event of a default thereunder, to enter upon the Real Estate and, among other things, to demand, collect, possess, receive, and/or sue for the rents, issues, and profits and do all acts relating to collection thereof.

WHEREAS, as further security for repayment of the Notes, on February 3, 2023, Landmark Louisville executed and delivered to Regions a Guaranty ("**Landmark Louisville Supplemental Guaranty**"). Landmark Louisville, among other things, agreed to perform fully and promptly when due all of the covenants, agreements, and other obligations undertaken by Borrower in the Notes and Loan Agreement, as amended.

WHEREAS, as further security for repayment of the Notes, on February 3, 2023, Landmark Kentucky executed and delivered to Regions a Guaranty ("**Landmark Kentucky Supplemental Guaranty**," and with the Landmark Louisville Guaranty, the Landmark Kentucky Guaranty, and the Landmark Louisville Supplemental Guaranty, the "**Guaranties**"). Landmark Kentucky, among other things, agreed to perform fully and promptly when due all of the covenants, agreements, and other obligations undertaken by Borrower in the Notes and Loan Agreement, as amended.

WHEREAS, Regions is the lawful owner and holder in due course of the Construction Note, Supplemental Note, Mortgage, Amended Mortgage, ALR, Amended ALR, Guaranties, Fixture Filings, UCC Financing Statement, the security interest in the Collateral, as same may have been amended, and any other instrument or agreement relating to and/or securing the indebtedness referred to herein (collectively referred to for purposes of this action as the "**Loan Documents**").

WHEREAS, Borrower has failed to make payments when due under the Notes, and the Notes are in default for nonpayment. Regions, as the owner and holder in due course of the Notes, declared the entire principal balance, together with all accrued and unpaid interest and all other sums due thereunder including reasonable attorneys' fees, to be due and payable. Borrower failed and refused to pay the same and all applicable grace and/or cure periods, if any, have expired.

WHEREAS, Borrower failed to pay *ad valorem* real property taxes as and when due as required by the Mortgage and Amended Mortgage. *See* Exhibit C, § 2. This failure is an Event of Default under the Mortgage and Amended Mortgage.

WHEREAS, On September 9, 2025, the Jefferson Circuit Court in Jefferson County, Kentucky, entered judgment on Regions' foreclosure complaint (the "**Judgment"**), confirming Regions' lien on the Property.

WHEREAS, in accordance with the Judgment, as of June 5, 2024, the total outstanding amount with respect to the Promissory Note and the Supplemental Promissory Note was not less than $4,832,392.16, including principal, interest, advances, costs and expenses, and other charges, plus per diem interest of $1,022.89, at the current rate of 7.09%, plus future accruing advances, costs, expenses, and fees.

WHEREAS, Borrower filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on February 27, 2026, and continues to operate as debtor-in-possession.

WHEREAS, Borrower and Guarantors represent that, because of their financial condition, they are unable to pay the full amount owed on the Judgment. The parties are entering into this Agreement because of Borrower and Guarantors' representations concerning their financial condition.

WHEREAS, Regions has agreed to accept a discounted payoff in full and final settlement of the Judgment, or in the alternative, to allow the Debtor to list the Property for sale, on the terms agreed to herein.

**Agreement**

FOR AND IN CONSIDERATION of the consideration stated herein, the foregoing recitals, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereto, intending to be legally bound hereby, agree as follows:

1. Borrower shall endeavor to refinance the Property. Regions shall permit Borrower 60 days from the date of this Agreement to obtain a firm commitment for financing which provides for closing of the re-finance on or before December 23, 2026 (the "Outside Date").

2. In consideration of prompt payment, Borrower agrees to pay, and Regions agrees to accept, the net sum of $3,300,000.00 (the "Settlement Sum") in full and final settlement of the Judgment and the obligations under the Loan Documents, provided that the Settlement Sum is received by Regions in full, whether through a refinance or a closed sale of the Property, on or before the Outside Date. If the Settlement Sum is not received in full on or before the Outside Date, the Property shall be sold and the net proceeds paid to Regions in accordance with Paragraph 4, in full and final satisfaction of the Judgment and the Loan Documents.

3. Upon Regions' receipt of the Settlement Sum in full, the Judgment and all obligations under the Loan Documents shall be deemed fully satisfied, and Regions shall promptly execute and deliver to Borrower, in recordable form where applicable, all documents reasonably necessary to release and discharge the same, including without limitation: (a) a release and satisfaction of the Mortgage and the Amended Mortgage; (b) a release of the ALR and the Amended ALR; (c) UCC-3 terminations of the UCC Financing Statement and the Fixture Filing; (d) a release and satisfaction of the Judgment, any recorded judgment liens, and any *lis pendens* associated therewith; (e) a dismissal with prejudice of the foreclosure action; (f) the original Notes marked "paid in full" (or, if unavailable, a lost-note affidavit and cancellation); and (g) a release and discharge of each Guaranty and of each Guarantor.

4. If Borrower does not receive a firm commitment for re-financing the Property by the 60th day following execution of this Agreement, Borrower shall list the Property for sale with a reputable real estate broker on the 61st day following execution, at a price reasonably calculated to yield a net payment to Regions of at least the Settlement Sum. Nothing contained herein shall prohibit the Borrower from continuing to pursue a re-finance while the Property is listed for sale. If a sale closes on or before the Outside Date, the net proceeds shall be applied first to the ordinary costs of sale, and second to Regions in an amount equal to the Settlement Sum, which Regions agrees to accept in full and final satisfaction on the terms of Paragraph 2, with any remaining proceeds belonging to Borrower and its estate. If a sale does not close by after the Outside Date, Borrower agrees that either Borrower shall auction the Property within 90 days or Regions shall receive stay relief to foreclose, in Regions' sole discretion. Upon Regions' receipt of an amount equal to or exceeding the Settlement Sum, the releases required by Paragraphs 3 and 8 shall be delivered.

5. Until closing or payoff, Borrower shall continue to pay $20,000.00 per month to Regions, due by the 17th day of each month, to be applied to the Loan. The monthly payments shall not reduce the Settlement Sum due and payable under this Agreement.

6. Borrower shall be solely responsible for, and shall pay or otherwise resolve separately and outside of this Agreement, all ad valorem real property taxes, assessments, and any code enforcement, zoning, or other governmental violations affecting the Property. The Settlement Sum payable to Regions shall not be reduced by, offset against, or subject to deduction for any such taxes, assessments, or violations, and Regions shall be entitled to receive the full Settlement Sum without deduction on account thereof.

7. In consideration of Regions' agreement to accept a discounted payoff as set forth in this Agreement and for other good and valuable consideration the receipt and sufficiency of which are hereby acknowledged, Borrower and Guarantor, for themselves, their representatives, attorneys and agents, hereby completely release and forever discharge Regions and its officers,

directors, agents, attorneys, representatives, insurers, employees, subsidiaries, affiliates, predecessors, successors, assigns and all other persons, firms, or corporations, whether or not specifically named herein, of and from any and all claims, demands, obligations, actions, causes of action, rights, damages of whatsoever nature, costs, expenses, and compensation whether based in contract, tort or upon some other theory of recovery, which it now has or which may hereafter accrue or otherwise be acquired on account of or in any way arising out of the claims that gave rise to the Judgment, or the relationships or dealings between the Parties, or which could have been the subject of any suit or claims and all related proceedings, including, without limitation, any and all claims, demands, obligations, rights, costs, and expenses for contribution, indemnification or otherwise under applicable law, or the relationship or dealings between the Parties. This Agreement shall be a fully binding and complete settlement as between the Parties relating to those matters.

8. Effective upon Regions' receipt of the Settlement Sum in full, , Regions, for itself and its officers, directors, agents, attorneys, representatives, insurers, employees, subsidiaries, affiliates, predecessors, successors, and assigns, completely releases and forever discharges Borrower and each Guarantor, and their respective members, managers, officers, representatives, attorneys, and agents, of and from any and all claims, demands, obligations, causes of action, rights, damages, deficiencies, costs, and expenses of whatsoever nature, whether based in contract, tort, or otherwise, arising out of or relating to the Notes, the Loan Documents, or the Judgment, , including without limitation any claim for any deficiency remaining after application of the Settlement Sum. Upon payment of the Settlement Sum, neither Borrower nor any Guarantor shall have any further liability to Regions under the Notes, the Guaranties, the Judgment, or any of the other Loan Documents referenced herein. For clarification, this release shall not affect the obligations of any Borrower, Guarantor, or other party for any obligations to Regions Bank unrelated to the Loan Documents referenced herein.

9. Prior to executing this Agreement, each Party consulted with and had the benefit of advice of legal counsel of their own selection and have relied upon the advice of such counsel.

10. The Parties acknowledge that this Agreement is entered into for the purpose of compromising and settling claims. The execution of this Agreement does not and shall not constitute an admission or inference of liability by the Parties and shall not be used or admissible by any party to suggest, imply or as evidence of liability of the Parties.

11. This Agreement is subject to and conditioned upon approval of the Bankruptcy Court in Borrower's pending Chapter 11 case (Case No. 3:26-bk-00886) pursuant to Fed. R. Bankr. P. 9019. Borrower shall file a motion seeking approval within three (3) days of execution and shall use reasonable efforts to obtain entry of an approving order. This Agreement shall become effective upon entry of an order approving it (the "Effective Date"); provided, however, that the time periods and deadlines set forth in Paragraphs 1 and 4 shall be calculated from the date of execution of this Agreement, notwithstanding the date of approval or the Effective Date. If the Court declines to approve this Agreement, it shall be null and void and shall not be admissible or used against any Party for any purpose.

12. This Agreement sets forth the entire agreement and understanding between the Parties and all previous discussions, understandings, representations, negotiations and agreements with respect to the matters covered by this Agreement are merged herein. Additionally, the

consideration recited herein is the full, complete and entire consideration for this Agreement and there is no further consideration to be paid by any party to any other party other than as recited herein.

13. If any provision or part of a provision of this Agreement shall be determined to be void or unenforceable by a court of competent jurisdiction, the remainder of the Agreement shall remain valid and enforceable by the parties hereto.

14. Should any provision of this Agreement require interpretation or construction, the choice of law and venue provisions of the Loan Documents shall control. It is agreed by the parties hereto that the court, administrative body or other entity interpreting or construing this Agreement shall not apply a presumption that the provisions hereof shall be more strictly construed against one party by reason of the rule of construction that a document is to be construed most strictly against the party who itself or through its agents prepared the same, it being agreed that all parties hereto and their respective attorneys have fully participated in the preparation of all provisions of this Agreement.

15. **THE PARTIES HEREBY AGREE TO WAIVE ANY AND ALL RIGHT TO A JURY TRIAL IN ANY LEGAL ACTION COMMENCED BY EITHER PARTY AGAINST THE OTHER RELATING IN ANY WAY TO THIS AGREEMENT OR ANY RELATIONSHIP BETWEEN OR ANY CONDUCT BY THE PARTIES WITH RESPECT THERETO, WHETHER AT LAW OR IN EQUITY, AND WHETHER SOUNDING IN CONTRACT, TORT, OR OTHERWISE.**

16. This Agreement may be executed in counterparts, each an original and all together one instrument. Signatures delivered by PDF, email, or electronic signature shall be deemed original signatures.

17. This Agreement may not be amended, modified, or supplemented except by a written instrument signed by all Parties.

18. This Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, successors, and permitted assigns.

19. Each Party shall execute such further documents and take such further actions as may be reasonably necessary to carry out the purposes of this Agreement.

20. In further consideration of the consideration exchanged hereunder, the Parties covenant and agree that the terms and conditions of this Agreement and any information contained in the Agreement relating to this settlement, or discussed or communicated during the negotiations leading up to execution of the Agreement will be kept confidential and private in all respects. Notwithstanding the foregoing, nothing in this paragraph shall restrict any Party from (i) complying with any summons, subpoena, court order, or similar process; (ii) making any filing, disclosure, or service reasonably necessary to seek, obtain, and consummate Bankruptcy Court approval of this Agreement, including the filing of a motion under Fed. R. Bankr. P. 9019 and the giving of notice to parties in interest as required by the Bankruptcy Code and Bankruptcy Rules; or (iii) making disclosures reasonably necessary for Borrower to refinance or sell the Property. The Parties acknowledge that this Agreement and its material terms may be required to be disclosed in, and may become part of the public record of, the Bankruptcy Case.

**[SIGNATURES ON NEXT PAGE]**

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be duly executed and delivered on the date first written above.

REGIONS BANK

By: Michael J. Loberger
Title: Vice President

8311 PRESTON HIGHWAY LR, LLC

Clifford Boyle
Clifford Boyle (Aug 13, 2026 17:34:00 EDT)

By: Clifford F. Boyle
Title: Sole Member

LANDMARK RECOVERY OF LOUISVILLE, LLC

Clifford Boyle
Clifford Boyle (Aug 13, 2026 17:34:00 EDT)

By: Clifford F. Boyle
Title: Managing Member

LANDMARK RECOVERY OF KENTUCKY, LLC

Clifford Boyle
Clifford Boyle (Aug 13, 2026 17:34:00 EDT)

By: Clifford F. Boyle
Title: Managing Member

# 8311 Regions Settlement and Release EV

Final Audit Report 2026-08-13

| | |
|---|---|
| Created: | 2026-08-13 |
| By: | Anna Liamina (anna.liamina@landmarkrecovery.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAArvtMM0z4PQsLGxXqy0p3NCv4TLD3G_30 |

## "8311 Regions Settlement and Release EV" History

Document created by Anna Liamina (anna.liamina@landmarkrecovery.com)
2026-08-13 - 7:21:54 PM GMT

Document emailed to cliff@landmarkrecovery.com for signature
2026-08-13 - 7:22:00 PM GMT

Email viewed by cliff@landmarkrecovery.com
2026-08-13 - 9:32:50 PM GMT

Signer cliff@landmarkrecovery.com entered name at signing as Clifford Boyle
2026-08-13 - 9:33:58 PM GMT

Document e-signed by Clifford Boyle (cliff@landmarkrecovery.com)
Signature Date: 2026-08-13 - 9:34:00 PM GMT - Time Source: server - Signature Appearance Selected: TYPE

Agreement completed.
2026-08-13 - 9:34:00 PM GMT

Adobe Acrobat Sign